UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DAVID EISENBACH, GEORGE H.                       :
EISENBACH, JOANNE EISENBACH,                     :
JENNIFER YOUNG, DANA CARINI,                     :
ROSEMARIE OLSHAKOSKI, MICHAEL                    :
OLSHAKOSKI, JONATHAN D. CHAMPLIN,                :
ANNE CHAMPLIN, RAYMOND H.                        ;
CHAMPLIN, KENNETH LEVINE,                        :
CATHERINE POLERA, JULIEN DAVIES,                 :
HOPE ROGERS, PHIL WEISS, CYNTHIA                 :
KING, JO MANGO, and LAURALEE                     :
HOLMBO,                                          :
    Plaintiffs,                                 :   **OPINION AND ORDER**
 v.                                              :
                                                 :   20 CV 8566 (VB)
VILLAGE OF NELSONVILLE; VILLAGE OF               :
NELSONVILLE ZONING BOARD OF                      :
APPEALS; VILLAGE OF NELSONVILLE                  :
PLANNING BOARD; WILLIAM BUJARSKI,                :
as Building Inspector of the Village of          :
Nelsonville; HOMELAND TOWERS, LLC;               :
NEW YORK SMSA LIMITED PARTNERSHIP                :
d/b/a VERIZON WIRELESS; and NEW                  :
CINGULAR WIRELESS PCD LLC d/b/a                  :
AT&T,                                            :
    Defendants.                                 :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiffs David Eisenbach, George H. Eisenbach, Joanne Eisenbach, Jennifer Young, Dana Carini, Rosemarie Olshakoski, Michael Olshakoski, Jonathan D. Champlin, Anne Champlin, Raymond H. Champlin, Kenneth Levine, Catherine Polera, Julien Davies, Hope Rogers, Phil Weiss, Cynthia King, Jo Mango, and Lauralee Holmbo bring this action against the Village of Nelsonville (the "Village"); Village of Nelsonville Zoning Board of Appeals ("ZBA"); Village of Nelsonville Planning Board ("Planning Board"); and William Bujarski, as Building Inspector of the Village (the "Building Inspector," and, collectively with the Village,

1

ZBA, and Planning Board, "Municipal Defendants"); and Homeland Towers, LLC ("Homeland"); New York SMSA Limited Partnership d/b/a Verizon Wireless; and New Cingular Wireless PCD LLC d/b/a AT&T (together, the "Wireless Defendants").

Now pending is the Wireless Defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6).  (Doc. #42).

For the reasons set forth below, the motion is GRANTED.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiffs' favor, as summarized below.

I.  Factual Background

The Wireless Defendants planned to build a wireless service generating facility (the "Facility") at 15 Rockledge Road (the "Premises") in Nelsonville, New York.  To that end, on July 20, 2017, they made three relevant applications:  (i) to the ZBA for a special-use permit to construct the Facility; (ii) to the ZBA for a variance from New York State Village Law § 7-736, which prohibits construction of any municipal utility or structure on landlocked property; and (iii) to the Planning Board for site plan approval of the Facility.

The ZBA and Planning Board conducted public hearings on the applications from November 15, 2017, to April 4, 2018.  The ZBA and Planning Board denied the applications on May 30, 2018, and published notice of the denial on June 12, 2018.

On June 29, 2018, the Wireless Defendants sued the Municipal Defendants in a separate action before this Court.  See N.Y. SMSA Ltd. P'ship v. Village of Nelsonville, No. 18-CV-5932 (S.D.N.Y. filed June 29, 2018).  The Wireless Defendants alleged the denial of their applications

violated, among other things, the federal Telecommunications Act. (See Doc. #29 ("Am. Compl.") Ex. A). The case resolved on January 29, 2020, by the entry of a consent order (the "Consent Order"), which provided for the construction of a modified version of the Facility. (See id. Ex. B).

Following the entry of the Consent Order, the Wireless Defendants applied to the Village Building Department for a building permit. The application was denied. Defendant Homeland supplemented the application by letter dated May 28, 2020. The supplemented permit application was granted, and the permit was issued on June 15, 2020.

Plaintiffs allege the Wireless Defendants made "significant and unstudied changes" to the project following the entry of the Consent Order. (Am. Compl. ¶ 88). For example, the new project provides for removal of sixty-six trees rather than the forty-three trees provided for in the Consent Order. (Id.).

II.     Procedural History

Plaintiffs, who own property or reside near the Premises, commenced this action on October 14, 2020. Plaintiffs filed the first amended and operative complaint on February 10, 2021, and assert eight claims against defendants. The first five claims are styled as federal claims, and the remaining three are styled as state-law claims.

First, plaintiffs allege the Municipal Defendants violated the National Environmental Policy Act ("NEPA") and the New York State Environmental Quality Review Act ("SEQRA") by denying the Wireless Defendants' initial applications with respect to the Facility without appropriate environmental review. (Count I) (Am. Compl. ¶¶ 103–04, 106, 112–14). Plaintiffs also allege all defendants violated NEPA and SEQRA when they entered into the Consent Order without appropriate environmental review. (Id. ¶¶ 105–12, 114–16).

Second, plaintiffs allege all defendants violated the Endangered Species Act ("ESA") by failing to consider the impact of the Facility on the habitats of the Indiana Bat and Northern Long-eared Bat when entering into the Consent Order (Am. Compl. ¶¶ 118–25), and that adopting the Consent Order was arbitrary, capricious, and an abuse of discretion in violation of the Administrative Procedure Act ("APA").  (Count II) (Id. ¶¶ 126–27).

Third, plaintiffs allege the Consent Order constitutes illegal contract zoning and violates Section 188-70 of the Zoning Law of the Village of Nelsonville (the "Code").  (Count III) (Am. Compl. ¶¶ 129–45).

Fourth, plaintiffs allege the Consent Order is impermissibly vague because, among other things, it did not determine whether the Wireless Defendants possess the authority to begin construction on Rockledge Road.  (Count IV) (Am. Compl. ¶¶ 147–53).

As relief for these four claims, plaintiffs seek to set aside the Consent Order (Am. Compl. ¶¶ 116, 127, 145, 153), as well as a declaratory judgment pursuant to the federal Declaratory Judgment Act.  (Count V) (Id. ¶ 155).

In their remaining claims (Counts VI, VII, and VIII), plaintiffs allege the changes made to the construction plans for the Facility after entry of the Consent Order violate SEQRA and the Code.  (Am. Compl. ¶¶ 157–59, 167–72).  Plaintiffs further allege the Building Inspector acted ultra vires and in violation of SEQRA when he granted the June 15, 2020, building permit.  (Id. ¶¶ 162–65, 167–73).  As relief, plaintiffs seek a declaratory judgment that the June 15, 2020, building permit is void; an injunction against any construction pursuant to the permit; and an order pursuant to Article 78 of the New York Civil Practice Law and Rules vacating the permit.  (Id. ¶¶ 157–65, 167–73, 175–79).

The Municipal Defendants filed an answer on February 24, 2021.  (Doc. #30).  Thereafter, the Wireless Defendants filed the instant motion to dismiss.  (Doc. #42).[1]

## DISCUSSION

I.   Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2]  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[1]   On March 18, 2021, plaintiffs moved for a temporary restraining order to enjoin the Wireless Defendants from cutting and felling trees on the Premises.  (Doc. #45).  The motion was denied.  (Doc. #59).

[2]   Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). In addition, the Court may consider materials subject to judicial notice, including court filings in other litigation, not for the "truth of their contents" but for the fact that those filings were made and that other litigation exists. See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (collecting cases).

II.     National Environmental Policy Act

The Wireless Defendants contend plaintiffs have failed to state a claim under NEPA upon which relief can be granted.

The Court agrees.

A.      Legal Standard

NEPA "is a procedural statute intended to ensure Federal agencies consider the environmental impacts of their actions in the decision-making process." 40 C.F.R. § 1500.1(a). To that end, NEPA requires that federal agencies include "a detailed statement," which must include an assessment of the environmental impact of the proposed action, in "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C); Am. Bird Conservancy, Inc. v. FCC, 516 F.3d 1027, 1032–34 (D.C. Cir. 2008) (per curiam). "In other words, NEPA does not command an agency to favor any particular course of action, but rather requires the agency to withhold its decision to proceed with an action until it has taken a 'hard look' at the environmental consequences." Stewart Park & Rsrv. Coal., Inc. v. Slater, 352 F.3d 545, 557 (2d Cir. 2003).

To comply with NEPA and the regulations promulgated thereunder, the Federal Communications Commission ("FCC") has, in turn, implemented regulations governing the issuance of licenses to wireless providers that seek to transmit signals over the spectrum.

"Spectrum is the range of electromagnetic radio frequencies used to transmit sound, data, and video across the country."  Spectrum Dashboard API, FCC, https://www.fcc.gov/reports-research/developers/spectrum-dashboard-api (last visited Nov. 1, 2021).  The FCC "has exclusive control over the spectrum, and wireless providers must obtain licenses from the FCC to transmit."  United Keetoowah Band of Cherokee Indians in Oklahoma v. FCC, 933 F.3d 728, 732 (D.C. Cir. 2019).  Although the FCC does not issue construction permits for wireless facilities, the issuance of a license to a wireless provider "necessarily contemplate[s] facility construction."  Id. at 735–36.  As a result, to comply with NEPA, the FCC requires wireless providers to account for the potential environmental impact of a wireless facility's construction when applying for a license.[3]

B.   Analysis

Plaintiffs allege "[n]either the ZBA nor the Planning Board conducted any environmental review of the" initial applications before denying them.  (Am. Compl. ¶ 103).  Plaintiffs further allege defendants failed to "conduct[ ] any environmental review . . . before adopting the Consent Order."  (Id. ¶ 105).

---

[3]   These regulations impose "rather modest obligations" upon wireless providers.  See Brehmer v. Planning Bd., 238 F.3d 117, 123 (1st Cir. 2001).  License applicants "shall initially ascertain whether the proposed facility may have a significant environmental impact . . . or is categorically excluded from environmental processing."  47 C.F.R. § 1.1312(a).  If the applicant determines the proposed facility "is categorically excluded from environmental processing, the . . . applicant may proceed with construction and operation of the facility."  Id. § 1.1312(c).  The FCC has categorically excluded "the construction of wireless facilities" from environmental processing in most cases.  See id. § 1.1306(c)(1).

These allegations do not state a claim under NEPA.  As implemented by the FCC, NEPA requires that applicants for transmittal licenses from the FCC—not applicants for construction permits from local governments, or the local governments who consider those applications—engage in environmental review.  Thus, NEPA did not require the ZBA or Planning Board to conduct environmental review of the Wireless Defendants' initial applications, nor did it require defendants to conduct environmental review before agreeing to the Consent Order.

Accordingly, plaintiffs' NEPA claim must be dismissed.

III.	Endangered Species Act

The Wireless Defendants contend plaintiffs have failed to state a claim under the ESA upon which relief can be granted.

The Court agrees.

A.	Legal Standard

The ESA mandates federal agencies ensure that, absent a properly obtained exemption, any agency action "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary [of the Interior or Commerce], after consultation as appropriate with affected States, to be critical."  16 U.S.C. § 1536(a)(2).  Federal regulations explain this imposes an obligation on the Fish and Wildlife Service and National Marine Fisheries Service to (i) inform state agencies of any such proposed action, (ii) request information from state agencies before crafting "the final biological opinion," and (iii) recommend the agency proposing the action provide those state agencies with that opinion.  Revised Interagency Cooperative Policy Regarding the Role of State Activities in Endangered Species Act Activities, 81 Fed. Reg. 8663, 8664 (Feb. 22, 2016).  This provision of the ESA

imposes obligations on federal agencies alone.  See, e.g., Elliott v. City of New York, 2010 WL 4628508, at *10 (S.D.N.Y. Nov. 15, 2010), aff'd, 49 F. App'x 108 (2d Cir. 2012).

The ESA also provides for a private right of action.  16 U.S.C. § 1540(g).  Specifically, the ESA permits "any person" to initiate an action against "any person, including the United States and any other governmental instrumentality or agency" for violations of the ESA or regulations promulgated thereunder.  Id. § 1540(g)(1)(A).

Citizen suits brought under this provision are subject to the doctrine of administrative exhaustion.  Such suits may not be brought "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation."  16 U.S.C. § 1540(g)(2)(A)(i).  "A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA."  Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 520 (9th Cir. 1998).

B. Analysis

Plaintiffs allege defendants "[f]ail[ed] to conduct any mandatory review of critical habitats or threatened and endangered species" before agreeing to the Consent Order.  (Am. Compl. ¶ 124).  Plaintiffs claim this failure means defendants "failed to ensure that the [Facility] and its constituent actions will not destroy, or adversely modify, critical habitats for the Indiana Bat and Northern Long-eared Bat."  (Id.).  This, plaintiffs contend, violates Section 1536(a)(2) of the ESA.

These allegations do not state a claim under Section 1536(a)(2) of the ESA because this provision imposes obligations on federal agencies alone, and no defendant here is a federal agency.

Moreover, even if defendants were federal agencies, the claims must be dismissed because plaintiffs did not allege they provided notice to defendants or the relevant federal agency as required by Section 1540(g)(2). See, e.g., Ireland v. Suffolk County, 2008 WL 11394156, at *8 (E.D.N.Y. Aug. 26, 2008).

Accordingly, plaintiffs' ESA claim must be dismissed.[4]

IV.     Rule 60(d)(1) Independent Action

The Wireless Defendants contend plaintiffs' request to set aside the Consent Order constitutes an impermissible attack on a final judgment.

The Court agrees.

A.      Legal Standard

It is within the discretion of a court to entertain independent actions for relief from a judgment or order of that court. Campaniello Imps., Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 661 (2d Cir. 1997); see also Fed. R. Civ. P. 60(d)(1) (providing Rule 60 "does not limit a court's power to . . . entertain an independent action to relieve a party from a judgment, order, or proceeding"). To maintain such an action, plaintiffs "must (1) show that they have no other available or adequate remedy; (2) demonstrate that [plaintiffs]' own fault, neglect, or carelessness did not create the situation for which they seek equitable relief; and (3) establish a

---

[4] In their claim under the ESA, plaintiffs also allege the adoption of the Consent Order is "arbitrary, capricious, and abuse of discretion, and actionable pursuant to 5 U.S.C. § 706(2)(A)," that is, the APA. (Am. Compl. ¶ 126). This claim is frivolous. The APA applies only to federal agencies, not municipalities, private corporations, or individuals. 5 U.S.C. § 701(b)(1) (defining "agency" as "each authority of the Government of the United States"); see, e.g., McFarland v. Inland Wetlands Comm'n, 2018 WL 691712, at *2 (D. Conn. Feb. 2, 2018) ("[T]he APA does not apply to local government actors or entities like the Town of Wilton or its Inland Wetlands Commission."); Mwabira-Simera v. Howard Univ., 692 F. Supp. 2d 65, 70 (D.D.C. 2010) (same for individuals and private corporations). To the extent plaintiffs are asserting claims under the APA, they must be dismissed.

recognized ground—such as fraud, accident, or mistake—for the equitable relief." Campaniello Imps., Ltd. v. Saporiti Italia S.p.A., 117 F.3d at 662.  To establish the first element, plaintiffs must demonstrate "there was no opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action."  Gleason v. Jandrucko, 860 F.2d 556, 560 (2d Cir. 1988).  For example, if a moving party could have moved for relief from the original judgment pursuant to Rule 60(b), that party is precluded from bringing an independent action for relief under Rule 60(d).  See, e.g., Jones v. Safi, 2012 WL 4815632, at *4 (E.D.N.Y. Oct. 3, 2012), aff'd sub nom. Jones v. N.Y. Agencies, 550 F. App'x 67 (2d Cir. 2014) (summary order).

Further, "an independent action should be available only to prevent a grave miscarriage of justice."  United States v. Beggerly, 524 U.S. 38, 47 (1998).  Such situations are rare.  For example, the Fifth Circuit allowed plaintiffs to proceed with an independent attack on a judgment following a bench trial where the district judge who presided over the bench trial was subsequently impeached and removed by the Senate for, among other things, his conduct during that case.  Turner v. Pleasant, 663 F.3d 770, 776–78 (5th Cir. 2011).  In other words, only truly exceptional circumstances justify an independent action for relief under Rule 60(d).

B.   Analysis

Throughout the amended complaint, plaintiffs allege the Consent Order is void and must be set aside.  (Am. Compl. ¶¶ 116, 127, 145, 147–53, 178–79).  The Court fairly construes these allegations as an independent action to relieve plaintiffs from the Consent Order.  Fed. R. Civ. P. 60(d)(1); see, e.g., United States v. Buck, 281 F.3d 1336, 1342 (10th Cir. 2002) (construing motion for relief under Rule 60(b)(6) as an independent action for relief because "[t]he substance of the plea should control, not the label").  Because this Court entered the original order, it

possesses "inherent ancillary equitable jurisdiction" over this claim. Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 70 (2d Cir. 1990).

Plaintiffs did not make the requisite showing to maintain an independent action for relief, and as a result these claims must be dismissed.

First, plaintiffs have not demonstrated they lacked any "other available or adequate remedy" to challenge the Consent Order. Campaniello Imps., Ltd. v. Saporiti Italia S.p.A., 117 F.3d at 662. Instead, plaintiffs concede they neglected at least one remedy available to them—intervention in the original action—because they perceived the "possibility of success" was "significantly impaired" following this Court's denial of motions to intervene by two other Village residents. (Am. Compl. ¶ 139). This argument is not persuasive for two reasons. For one, the Court's denial of those initial intervention motions was "without prejudice to refiling if the circumstances materially change[d] in th[e] case." N.Y. SMSA Ltd. P'ship v. Village of Nelsonville, 2019 WL 1877335, at *2–3 (S.D.N.Y. Apr. 26, 2019). And for another, plaintiffs have alleged no other facts suggesting their applications to intervene in the original action would have been denied.

Second, plaintiffs also do not allege their decision not to seek to intervene in the original action was the result of external circumstances such that the Court could conclude plaintiffs "did not create the situation for which they seek equitable relief." Campaniello Imps., Ltd. v. Saporiti Italia S.p.A., 117 F.3d at 662; Opals on Ice Lingerie v. BodyLines, Inc., 425 F. Supp. 2d 286, 291–94 (E.D.N.Y. 2004).

Third, plaintiffs do not state any recognized ground, such as fraud, accident, or mistake, for relief from the Consent Order. Instead, plaintiffs contend the Consent Order violates federal and state law. That is, plaintiffs disagree with the Court's decision to so order the settlement

12

reached among the parties to the initial litigation. Disagreement with a court's conclusions of law is not a recognized ground for relief. Cf. Strategic Res. Inst., Inc. v. Fabrozzi, 187 F.R.D. 507, 512 (S.D.N.Y. 1999).

And finally, plaintiffs have not sufficiently alleged relief from the Consent Order will "prevent a grave miscarriage of justice." United States v. Beggerly, 524 U.S. at 47. Plaintiffs allege the Facility "hurts the community burdened by its looming visual presence," "compromise[s] the interests of the federal government," and "might" have "irreversible" impacts on the Indiana Bat and Northern Long-Eared Bat. (Am. Compl. ¶¶ 93–96). These allegations do not give rise to "a grave miscarriage of justice." See, e.g., Giasson Aerospace Sci., Inc. v. RCO Eng'g Inc., 872 F.3d 336, 341–42 (6th Cir. 2017) (affirming dismissal of independent action where plaintiff sought to "force renegotiation of a nearly seven-year-old settlement reached between sophisticated, represented parties, without any evidence of intentional misrepresentation").

For these reasons, plaintiffs' request to set aside the Consent Order amounts to an impermissible attack on a final judgment and must be rejected.

V.      Remaining Claims

The Court dismisses plaintiffs' remaining claims for lack of subject matter jurisdiction.

     A.      Legal Standard

Federal courts have an independent obligation to determine whether subject matter jurisdiction exists even when no party challenges it. See Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006).

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C.

§ 1367(c)(3).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

Federal courts possess original jurisdiction over civil actions "arising under" federal law.  28 U.S.C. § 1331.  This includes any state-law cause of action that raises a "substantial federal question."  W. 14th St. Com. Corp. v. 5 W. 14th St. Owners Corp., 815 F.2d 188, 194–95 (2d Cir. 1987).

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent basis for jurisdiction.  Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 752–53 (2d Cir. 1996).  In the absence of such an independent basis, a declaratory judgment claim must be dismissed.  Correspondent Servs. Corp. v. First Equities Corp., 442 F.3d 767, 769–70 (2d Cir. 2006) (per curiam).

B.   Analysis

Although plaintiffs style their allegations of SEQRA violations (Count I) and illegal contract zoning (Count III) as federal claims (see Am. Compl. at 21 ("Federal claims for relief")), the Court finds these claims arise under state law.

First, although SEQRA is patterned on NEPA, it is a separate statute that imposes its own requirements on different parties.  See H.O.M.E.S. v. N.Y. State Urb. Dev. Corp., 69 A.D.2d 222, 232 (4th Dep't 1979).  Thus, claims pursuant to SEQRA arise under state law, not federal law.

Second, plaintiffs' claims of illegal contract zoning also arise under state law.  Plaintiffs allege the Consent Order is impermissible contract or conditional zoning.  (Am. Compl. ¶¶ 129–44).  Zoning is exclusively within a state's police power, and, in New York, that power is

delegated to local governments.  See DJL Rest. Corp. v. City of New York, 96 N.Y.2d 91, 94–95 (2001).  Any challenge to an exercise of the Village's zoning power arises under state law.  See N.Y. Village Law § 7-700.

In the absence of independent federal jurisdiction, plaintiffs' claim for a declaratory judgment pursuant to the Declaratory Judgment Act (Count V) must also be dismissed.  See, e.g., Correspondent Servs. Corp. v. First Equities Corp., 442 F.3d at 769–70.

All of plaintiffs' remaining claims arise under state law.  (Am. Compl. ¶¶ 157–65 (Count VI), 167–73 (Count VII), 175–79 (Count VIII)).  Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state-law claims.  See Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997))).

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is directed to terminate the motion (Doc. #42) and close this case.

Dated: November 1, 2021
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge